

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00452-CR

SEBASTIAN NATHANIAL ROYS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 19,406-C, Honorable Ana Estevez, Presiding

November 8, 2013

## OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Sebastian Nathanial Roys appeals from his murder conviction by jury and the resulting sentence of 55 years of imprisonment. He presents five points of error, four asserting errors in the court's charge and one asserting insufficient corroborating evidence. We will affirm.

## Background

Roys was charged by indictment with intentionally and knowingly causing the death of Candice Tenise Herrera by shooting her with a firearm.[1]

After Roys plead not guilty, the State presented evidence showing that Herrera was shot to death at a City of Amarillo wood chipping site about 5:00 on a morning in October 2007. Roys and another man, Steven Solis, were present. Solis admitted his involvement in Herrera's death, and also was charged with her murder. He testified for the State at Roys' trial, telling the jury Roys arranged for him to bring Herrera to the chipping site, and that Roys shot Herrera.

Very shortly after the shooting, Roys and Solis took steps to hide their involvement. Solis said Roys contacted him as he drove after leaving the chipping site and instructed Solis to meet him at a car wash. Both washed their cars. While they were still at the car wash, a pickup arrived and Roys gave the occupants a rolled-up shirt.[2] Solis assumed the shirt contained the two handguns used in the shooting. The two occupants of the pickup were Martin Ekstrand and Chad Dumer, both of whom testified to their receipt and disposition of the handguns. The next day, Solis and Haven Lam[3] took the cars to a Discount Tire store and had four new tires mounted on each car. They took the old tires with them.

---

[1] TEX. PENAL CODE ANN. § 19.02 (West 2012).

[2] Other testimony described the wrapping as a towel.

[3] Lam was Roys' girlfriend at the time, but his wife by the time of trial. She also testified at trial.

Police recovered shell casings near the body at the chipping site. An autopsy was performed, showing Herrera was shot six times, twice in the head.

There was testimony regarding Roys' belief that Herrera had drawn a map or "floor plan" of Roys' residence, and his further belief the "floor plan" was part of a plan to rob him. During the investigation, police recovered a drawing of Roys' home. Solis testified that, before he shot her, Roys asked Herrera why she had a map of his house and accused her of planning to rob him.

Following presentation of the evidence, the jury found Roys guilty as charged and sentenced him as noted. This appeal followed.

Analysis

Jury Charge Error – Accomplice Witnesses

The trial court instructed the jury that Solis was an accomplice witness, and included instructions on the law of accomplice witness testimony and the requirement for its corroboration. In his first two points of error, Roys contends the trial court reversibly erred by failing to instruct the jury that Dumer and Eckstrand also were accomplice witnesses. The asserted errors were not raised with the trial court.

Before a conviction can be based on an accomplice's testimony, the testimony must be corroborated by other evidence tending to connect the accused to the crime. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2012); *Nelson v. State,* 297 S.W.3d 424, 429 (Tex. App.—Amarillo 2009, pet. ref'd). The testimony of one accomplice may not be relied on to corroborate the testimony of another accomplice. *See Smith v. State,*

332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (accomplice testimony must be corroborated by "other, non-accomplice evidence that tends to connect the accused to the offense").

An accomplice is someone who participates with the defendant before, during or after the commission of a crime and acts with the required culpable mental state. *Nelson,* 297 S.W.3d at 429, *citing Druery v. State,* 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). The accomplice witness's participation with the defendant must involve some affirmative act that promotes the commission of the offense with which the defendant is charged. *Nelson,* 297 S.W.3d at 429. Simply having knowledge of the offense and not disclosing that information, or even trying to conceal the offense, does not render a witness an accomplice. *Id.* "In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law." *Druery,* 225 S.W.3d at 498, *citing Paredes v. State,* 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).

When the evidence clearly shows that a witness is an accomplice as a matter of law, the trial court must instruct the jury accordingly. *Smith,* 332 S.W.3d at 439. When there is doubt whether a witness is an accomplice (i.e., the evidence is conflicting), the trial court should instruct the jury to determine a witness's status as a fact issue. *Id.* at 439-40. Finally, when the evidence clearly shows that a witness is not an accomplice, the trial court is not obliged to instruct the jury on the accomplice witness rule as a matter of law or fact. *Id.* at 440. The evidence in each case will dictate whether an accomplice as a matter of law or fact instruction is required. *Cocke v. State,* 201 S.W.3d 744, 747 (Tex. Crim. App. 2006).

Here, the record indicates both Eckstrand and Dumer were convicted of tampering with evidence of Herrera's murder. They went to the carwash together when Roys called them, after Herrera was killed. Roys gave them two handguns wrapped in a towel. Dumer and Ekstrand both testified they took the guns to the home of Bill Fleming. Eckstrand never saw the guns again but Dumer later broke them into pieces using tools from Fleming's shop. He left the pieces at Fleming's home. Eckstrand picked up used tires from Roys' home. Dumer later picked up the tires from Eckstrand's storage unit, and disposed of them at four different tire shops.

Roys contends that Eckstrand and Dumer concealed the instrumentalities of the murder, thereby aiding Roys in his commission of that offense, and thus are accomplice witnesses as a matter of law. We disagree.

Merely assisting a murderer in disposing of the murder weapon after the murder does not make one an accomplice as a matter of law. *Druery,* 225 S.W.3d at 500 (witness who "merely assist[ed] after the fact in the disposal of a body" not an accomplice witness in prosecution for murder; "same logic applies" to assisting in disposition of gun after the murder). Rather, the "witness must still be susceptible to prosecution for the murder itself by having affirmatively assisted in committing the offense." *Id.* at 500. The actions of Eckstrand and Dumer helping Roys hide and dispose of the handguns and the tires after Herrera's murder do not make them accomplice witnesses. Nor does the evidence suggest they acted with the culpable mental state required for guilt of murder. *See Nelson,* 297 S.W.3d at 429 (holding, as one reason witness was not accomplice witness in murder prosecution that witness's

conduct of assisting in washing out pickup truck bed after disposition of victim's body was not done with culpable mental state to cause victim's death).

The trial court did not err in failing to instruct the jury on the accomplice witness rule as applied to Eckstrand and Dumer.[4] We overrule Roys' first two points of error.

Sufficiency of Corroborating Evidence

In Roys' fifth point of error, he argues the non-accomplice evidence, that is, the evidence other than Solis' accomplice testimony, fails to connect him to the commission of the murder. We disagree.

When reviewing the sufficiency of non-accomplice evidence under article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense. *Smith,* 332 S.W.3d at 439. The non-accomplice evidence need not directly link the defendant to the crime, "nor does it alone have to establish his guilt beyond a reasonable doubt." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).

---

[4] Roys also mentions he was charged with tampering with evidence and, since that is the offense with which Dumer and Ekstrand also were charged, Roys argues, they were accomplice witnesses as a matter of law. If Roys had been tried for tampering with evidence, and Dumer and Ekstrand were called to testify in that prosecution, they may well have been accomplice witnesses. But Roys was tried here for the murder itself. That a witness has complicity with an accused in the commission of other offenses does not make his testimony that of an accomplice witness for the offense for which the accused is on trial if there is no showing of his complicity in that offense. *Druery*, 225 S.W.3d at 498; *Caraway v. State,* 550 S.W.2d 699, 702 (Tex. Crim. App. 1977); *Gonzales v. State,* No. 07-10-00175-CR, 2011 Tex.App. LEXIS 2607 (Tex. App.—Amarillo April 7, 2011, pet. ref'd) (mem. op. not designated for publication).

The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. *Smith,* 332 S.W.3d at 442. Direct or circumstantial non-accomplice evidence is sufficient if rational jurors could have found it tended to connect the accused to the offense. *Id.* "So when there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Id.* Thus, it is not appropriate for an appellate court to independently construe the non-accomplice evidence. *Id.*

The appellate court views the corroborating evidence in the light most favorable to the jury's verdict. *Gill v. State,* 873 S.W.2d 45, 48 (Tex. Crim App. 1994). The defendant's liability as a principal or under a party theory is not relevant under an article 38.14 analysis. *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). The question is whether some evidence "tends to connect" him to the crime; the connection need not establish the exact nature of his involvement as a principal or party. *Id.*

Because we have determined Eckstrand and Dumer were not accomplice witnesses, their testimony is properly considered among the evidence corroborating Solis' accomplice testimony. *See Smith,* 332 S.W.3d at 439 (corroboration requires "other, non-accomplice evidence that tends to connect the accused to the offense"). Both men testified Roys gave them two handguns at the carwash. Both testified they took the guns to the home of Bill Fleming. Fleming testified he surrendered a .40 Glock and a .45 Tanfoglio "Witness" automatic weapon to police. Expert testimony confirmed

that two of the .40 casings recovered from the crime scene were fired by that .40 Glock.[5]  This evidence alone tends, strongly, to connect Roys with the murder.

Even without the testimony of Eckstrand and Dumer, moreover, there is evidence tending to connect Roys to Herrera's murder.  Lam testified that on the morning of the shooting, Roys told her "[Herrera] would not be coming home."  Roys also told Lam on the night they were arrested that "the guns were gone and that someone got rid of them."  Witnesses testified to Roys' instructions to replace the tires on the cars.

Further, two witnesses confirmed the existence of the "floor plan" that upset Roys.  These witnesses connected the "floor plan" to Herrera as its likely author and confirmed Roys was aware of the drawing and its likely meaning that Herrera was planning to rob him, and that he was very upset about it.  Another witness testified that about two weeks before the murder, Roys told him about a woman who made a "floor plan" of his house.  Another witness testified to a conversation he had with Roys about the "detailed floor plan of his house" and his question as to "what should be done about it."  The witness also recalled seeing Roys with a black Glock handgun at some point prior to the murder.

Viewed in the light most favorable to the verdict, the record contains non-accomplice evidence tending to connect Roys to the offense.  *Smith,* 332 S.W.3d at 439.  We resolve Roys' fifth issue against him.

---

[5] The Department of Public Safety expert testified he was able to determine that fact despite the damage done to the handgun by Dumer.  Fleming testified he took the handguns to police after Dumer and Eckstrand were arrested.

Law of Parties Instruction

One witness testified that Solis once told her that he shot Herrera. The trial court instructed the jury on the law of parties and included an application paragraph permitting the jury to find Roys guilty as a party to Herrera's murder by Solis. Paragraph 10 of the court's charge contained the abstract instructions requiring corroboration of Solis' accomplice witness testimony. The application paragraph for Roys' guilt or innocence as the shooter was paragraph number 11 in the charge. It began, "Now, bearing in mind the foregoing instructions . . . ." Paragraph 12 of the charge contained the court's abstract instructions on the law of parties. The application paragraph dealing with Roys' guilt or innocence as a party was the next paragraph, number 13. It also began, "Now, bearing in mind the foregoing instructions . . . ."

By Roys' third point of error, he contends the charge was not clear, and thus was erroneous, that the corroboration requirement for accomplice testimony also applied to Roys' possible guilt as a party. He argues the failure to give an explicit instruction that the law of accomplice testimony also applied to the jury's consideration of his possible guilt as a party for the acts of Solis allowed the jury to believe it could convict Roys as a party without corroboration of Solis' accomplice testimony. This objection to the charge was not raised at trial.

Roys does not complain of any inadequacy in the court's abstract instructions on the law of accomplice witnesses and corroboration. Nor does he cite us to authority requiring that the jury charge expressly reiterate the applicability of the accomplice witness instruction, paragraph 10 of this charge, to the later application paragraph for

9

party liability, paragraph 13.[6] His argument amounts to a contention the jury would not understand that the "foregoing instructions" they were to bear in mind when addressing paragraph 13 included all the foregoing instructions, including the accomplice witness instructions in paragraph 10.

In its recent opinion addressing a somewhat similar contention, *Vasquez v. State,*[7] the Court of Criminal Appeals cited with approval a statement of the Beaumont Court of Appeals in a 2008 opinion, "[i]t is unnecessary to repeat every abstract definition in the application paragraph of the jury charge." *Vasquez,* 389 S.W.3d at 367 n.16, *citing Holland v. State,* 249 S.W.3d 705, 708-09 (Tex. App.—Beaumont 2008, no pet.). The court in *Vasquez* also reiterated prior holdings that when reviewing the charge for possible error, we "must examine the charge as a whole instead of a series of isolated and unrelated statements." 389 S.W.3d at 366, *quoting Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). Examining the charge as a whole, we agree with the State's contention that the jury would have understood it was to consider all of the instructions contained in the charge to the jury. *See Stokes v. State,* 74 S.W.3d 48, 51 (Tex. App.—Texarkana 2002, pet. ref'd) (absent evidence to the contrary, we must presume the jury followed and understood the instructions). Concluding Roys has presented no persuasive argument the charge contained the error he sees, we resolve his third point of error against him.

---

[6] Roys' argument for this point of error simply generally incorporates by reference "his argument and authorities as set forth above," regarding the law of accomplice witness testimony.

[7] 389 S.W.3d 361 (Tex. Crim. App. 2012).

Party Liability

In Roys' fourth point of error, he argues the trial court committed jury charge error resulting in egregious harm when it allowed the case to be submitted to the jury on a theory of "party liability" when the indictment did not include such an allegation. He acknowledges the Court of Criminal Appeals has held that a trial court may charge a jury on the law of parties even when there is no such allegation in the indictment but urges this line of authority should be overruled.

The Court of Criminal Appeals recently has reaffirmed that, under state or federal law, "due process does not require a defendant's culpability as a party to the offense to be plead in the charging instrument." *Adames v. State,* 353 S.W.3d 854, 861 (Tex. Crim. App. 2011). The holding is a reiteration of previous holdings to the same effect. *See Marable v. State,* 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) ("it is well-settled that the law of parties need not be pled in the indictment"); *Pitts v. State,* 569 S.W.2d 898, 899-900 (Tex. Crim. App. 1978). As has the Waco Court of Appeals when also urged to overrule this aspect of the Court of Criminal Appeals' jurisprudence, we decline. *See Smith v. State,* No. 10-09-00289-CR, 2011 Tex. App. LEXIS 7685, at 6-7 (Tex. App.—Waco Sept. 21, 2011, no pet.) (mem. op., not designated for publication); *Davis v. State,* 276 S.W.3d 491, 500 (Tex. App.—Waco 2008, pet. ref'd). Roys' fourth point is overruled.

## Conclusion

Having resolved each of Roys' issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.